| SABRINA RICHARDSON | * | NO. 2023-CA-0757 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| NEW ORLEANS POLICE | * | |
| DEPARTMENT | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

<u>CONSOLIDATED WITH:</u>          <u>CONSOLIDATED WITH:</u>

SABRINA RICHARDSON          NO. 2023-CA-0793

VERSUS

NEW ORLEANS POLICE DEPARTMENT

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9409
* * * * * *
**Judge Roland L. Belsome**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Roland L. Belsome, Judge Joy Cossich Lobrano)

**LOBRANO, J., CONCURS IN THE RESULT.**

Kevin Vincent Boshea
ATTORNEY AT LAW
2955 Ridgelake Drive, Suite 207
Metairie, LA 70002

      COUNSEL FOR PLAINTIFF/APPELLEE

Donesia D. Turner
CITY ATTORNEY
William R. H. Goforth
Elizabeth Robins
Corwin M. St. Raymond
ASSISTANT CITY ATTORNEY
1300 Perdidio Street
Room 5E03
New Orleans, LA 70112

      COUNSEL FOR DEFENDANT/APPELLANT

**REVERSED AND RENDERED**
**JULY 10, 2024**

Appellant, New Orleans Police Department ("NOPD") appeals the decision of the Civil Service Commission ("Commission") that reduced the suspension of appellee, Sabrina Richardson ("Richardson") from 119 days to 2 days. Richardson, a captain on the police force, was suspended for claiming work hours for NOPD while she was also being paid for a private detail for the New Orleans Fairgrounds ("Fairgrounds"). For the reasons below, we reverse the decision of the Commission and reinstate the NOPD's decision.

***Summary of facts***

On November 23, 2021, the Superintendent of Police and the Public Integrity Bureau ("PIB") received an anonymous complaint via departmental mail alleging that Richardson was receiving payments for private details that she did not work at the Fairgrounds. The complainant alleged that Richardson was signing in at the Fairgrounds and then going home instead of providing security patrols in and around the Fairgrounds. It is undisputed that Richardson worked private details for the Fairgrounds for six years prior to the date of the complaint. Police officers are permitted to engage in secondary employment while working for NOPD. The City of New Orleans established the Office of Police Secondary Employment

("OPSE") to administer and manage police secondary employment. Secondary employers such as Fairgrounds are considered "clients" of OPSE and OPSE records the officers' working hours and manages payroll for the clients. When an officer such as Richardson "clocks in" or "out" at a secondary employment site, that information is automatically conveyed to OPSE and the officer is paid accordingly. In order to investigate the anonymous complaint, Captain Nicholas Gernon ("Gernon") compared Richardson's NOPD timesheet records with her paid detail timesheets. This comparison showed seventeen instances in which Richardson claimed work hours for NOPD at the same time that she recorded compensable time working private details. On average, the overlaps were approximately four hours each.

As part of his investigation, Gernon also attempted to verify whether Richardson had been in locations other than her secondary employment site during hours recorded by OPSE. Gernon identified 10 instances in which Richardson's license plate was read by NOPD cameras at places other than the location of her paid details. Richardson claimed that one of those license plate sightings from the camera on Chef Menteur Highway resulted from the loan of her car to a friend who was moving while she worked a detail at the Superdome for the Bayou Classic. The other nine sightings were in Algiers near Richardson's home.

Gernon brought his findings to the PIB with an allegation that Richardson had violated NOPD Operations Manual Chapter 22.08, paragraph 25,[1] which provides:

---

[1] In addition to the overlapping hours charge, Gernon concluded that Richardson violated NOPD's policies that prohibited officers from working more than 16 ½ hours per day and more than 24 hours per week on a secondary detail. Richardson does not contest these charges in this appeal and the Commission assessed no penalties against her on account of those violations.

Members authorized to work police secondary employment may perform or engage in authorized assignments only during the hours they are off-duty. Members may accept and work a police secondary employment opportunity when not on duty or while on authorized leave.

At the time of the anonymous complaint, Richardson held the rank of commander[2] and was the head of PIB. She was charged with the oversight and management of approximately 35 people from March 2019 until November 2021. The general office hours of PIB are 8 a.m. to 4 p.m. As a commander or captain, Richardson was categorized as an Executive Administrative Professional ("EAP"). Officers in these positions are not required to "punch a clock" and are trusted to work at least a 40-hour week.[3] EAPs are on call and have professional responsibilities at all hours every day of the year. Richardson headed PIB when 13 of the 17 instances of overlapping work hours occurred.

Richardson held the rank of lieutenant at the time of the other 4 incidents. Lieutenants are not categorized as EAPs and must account for their time on an hourly basis.

*Prior proceedings*

On August 24, 2022, a panel of 3 Deputy Superintendents held a pre-disciplinary hearing to consider the charges against Richardson. The panel concluded that she was guilty of 17 instances of overlapping NOPD work hours and secondary employment. Based on the nature of the violations, the panel determined that they fit within Class C of the NOPD's Penalty Matrix. Following the guidelines of the matrix, the panel assessed a penalty of 119 days of

---

[2] Commander is an unclassified rank.
[3] Captain Precious Banks, who succeeded Richardson as head of PIB, testified that she works from 8 a.m. to 4 p.m.

suspension, treating each overlap as a separate infraction. The panel considered and implemented both aggravating and mitigating factors.

Richardson appealed the disciplinary action to the Commission. After a three-day evidentiary hearing, the Commission issued a decision on September 13, 2023. NOPD filed a motion for rehearing that resulted in an amended decision dated October 2, 2023. The Commission's decision reduced Richardson's penalty from 119 days to 2 days of suspension from duty. From this decision, both parties filed separate appeals. The two appeals were consolidated for decision here.

### Standard of review

We review decisions of the Commission applying the manifest error standard for all findings of fact. Rulings of law are reviewed *de novo*. *Walters* v. *Dep't of Police of City of New Orleans,* 454 So.2d 106, 114 (La. 1984). In addition, this court may modify or reverse an action of the Commission upon a finding that it acted arbitrarily or capriciously. A decision is arbitrary or capricious if there is no rational basis for the action taken. *Bannister* v. *Department of Streets,* 95-0404, p. 8 (La. 1/16/96), 666 So.2d 641, 647. As we review the actions of the Commission, we are mindful that the Commission may not reduce a disciplinary penalty simply because it has a view different of the appropriate penalty from that of the hiring authority. *Stevens v. Dep't of Police*, 00-1682, p. 7 (La. App. 4 Cir. 5/9/01), 789 So.2d 622, 626.

### Legal analysis

In its decision, the Commission made two observations in support of its modification of the NOPD ruling. First, it opined that Richardson's penalty was greater than that applied to other similar offenders. Second, the Commission noted

4

that NOPD improperly relied on the pay records compiled by ADP, the city's timekeeping vendor. We disagree with both observations.

*Comparing penalties.* At about the same time that NOPD was investigating the anonymous complaint regarding Richardson, the Federal Bureau of Investigation was investigating 11 officers for public payroll fraud and wire fraud related to police secondary employment. The Professional Standards and Accountability Bureau ("PSAB") of NOPD also conducted an audit of payroll records. That audit resulted in formal disciplinary investigations of 26 officers by PIB. Deputy Chief Arlinda Westbrook ordered PSAB to determine whether any PIB officers were violating secondary employment rules. This audit was designed to avoid investigation by PIB officers who had conflicts of interest as a result of their own violations. The audit reflected that Richardson, along with others, was in violation of NOPD policy.

The Commission compared Richardson's penalty with those of other violators and determined that her penalty was too harsh. This form of analysis is incorrect. There is no legal support for the proposition that the Commission may reduce a penalty because it is greater than one imposed on another employee.[4] In addition, the Commission chose to compare Richardson's penalty with that of other officers who had reached a negotiated settlement with NOPD. This is a substantial difference because the negotiated settlements came with an admission of guilt and significant savings in the cost of investigation. NOPD also emphasized that those officers who received lesser penalties were charged with creating a

---

[4] Richardson mistakenly relies on *Waguespack v. New Orleans Police Dep't*, 22-0270 (La. App. 4 Cir. 11/30/22), 353 So. 3d 338, for support of the proposition. In *Waguespack*, the court did mention that others similarly situated were punished equally, but that was only an observation in support of NOPD's imposition of a punishment. It was never the sole basis for a determination of the propriety of a penalty.

secondary employment work schedule that conflicted with NOPD work hours. Those officers did not purport to have worked both schedules. In other words, Richardson was accused of billing hours to 2 employers. The other officers were charged with creating scheduling difficulties.

*Reliance on ADP time records.* As noted above, Gernon reached his conclusion that Richardson was in violation of policy primarily by comparing the timekeeping records of ADP and OPSE. Richardson argues that the ADP records are meaningless because they arbitrarily assign time to AEP employees who are not required to punch a clock. She also argues that her agreement with Fairgrounds also excused her from time-clock style accountability. By this logic, Richardson could never be held accountable for actual attendance at any of her work sites. That is an untenable result.

It is noteworthy that Gernon testified that most of Richardson's secondary employment time cards were in her own handwriting. NOPD and Richardson are in agreement that it was Richardson's duty to review her time records and correct any errors on both ADP and OPSE records. She did not make any such corrections, nor did she offer an alternative accounting of her time in her appeal to the Commission.

Richardson, herself, testified that she routinely worked her detail at the Fairgrounds during normal business hours for six years. Considering Richardson's salary, the public has a right to expect that her primary employment as head of PIB would be treated as more than a part-time job. The most basic principle by which NOPD and the Commission must be guided is that any penalty must be based on a real and substantial relationship between the improper conduct and the "efficient operation" of the department. *Newman v. Dep't of Fire,* 425 So.2d 753, 754 (La.

6

1983).  One could reasonably infer that Richardson's regular absence from the place where her 35 subordinates worked would negatively affect the efficient operation of her department.

We are persuaded by NOPD's argument that it would have been appropriate for NOPD to increase the penalty for Richardson's violations based on the level and scope of her responsibility and the nature of her position. As a captain supervising the department that investigates misconduct by members of NOPD, Richardson should be held to a higher standard.  We believe that it is fair to expect such a high-ranking member of NOPD to report a pattern of abuse, not profit from it.

We hold that the Commission's variance from NOPD's reasoning is arbitrary and capricious.  We further hold that Richardson's loose interpretation of her obligations to her position in the department negatively affected its efficient operation.  When those who are charged with enforcing departmental rules and policies take a *laissez-faire* attitude toward their duties, it is almost inevitable that the entire organization will follow suit.

For the reasons set forth above, we reverse the decision of the Commission and reinstate Richardson's suspension for 119 days.

**REVERSED AND RENDERED.**